THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| READING BLUE MOUNTAIN | : | |
| & NORTHERN RAILROAD CO. | : | |
| | : | |
| Plaintiff | : | |
| v. | : | 3:11-CV-2182 |
| | : | (JUDGE MARIANI) |
| UGI UTILITIES, INC., | : | |
| | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

### I.   Introduction

Plaintiff Reading Blue Mountain & Northern Railroad Co. petitions the Court to enjoin

Defendant UGI Utilities, Inc. from commencing drilling work on Plaintiff's Right-of-Way to install

Defendant's gas pipeline.  Specifically, Plaintiff's prayer for relief asks the Court to enjoin

Defendant "from taking possession of or entering upon the railroad operating property

belonging to [Plaintiff]." (Doc. 2).  Defendant's gas line "is intended to provide backup for the

entire City of Hazleton, serve customers along Rt. 309, serve industrial accounts in Banks

Township, serve other customers in the Borough of McAdoo, and also to serve one large-use

customer, Altadis," (Doc. 24, Affidavit of Donald Brominski) and would be located ten feet below

Plaintiff's tracks (Doc. 19).

Out of Plaintiff's 320 miles of track, (Doc. 13, Ex. H, ¶ 3) the overlap between the

planned pipeline and railroad will be an area of 60 x 20 feet, or 1,200 square feet.  (Doc. 13,

Ex. A). The pipeline itself is 8 inches across and encased in a 12-inch steel pipe. (*Id.*).

Plaintiff says it would permit the installation of the gas pipeline if Defendant would sign a

Licensing Agreement (Doc. 19), the terms of which would give Plaintiff the right to direct

Defendant to relocate the pipeline at Defendant's cost where necessary "to permit and

accommodate changes of grade or alignment and improvement in or additions to [Plaintiff's]

railroad facilities." (Doc. 1, Ex. B, ¶ 9). Defendant has refused to sign the Licensing

Agreement. Because of Defendant's refusal, Plaintiff alleges the only protection afforded to it in

the event it suffers damages is Defendant's $100,000 condemnation bond,[1] which states that

"no buildings or non-movable structures shall be placed or erected by the [Plaintiff] within the

area of the easement." (Doc. 13, Ex. F).

## II.    Analysis

### Standard for Preliminary Injunction

For Plaintiff to be entitled to a preliminary injunction, it must prove four elements: (1) a

likelihood of success on the merits, (2) irreparable harm if the injunction is denied, (3) the

granting of relief would not result in even greater harm to Defendant, and (4) the public interest

favors such relief. *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010). "The grant of injunctive

relief is an extraordinary remedy which should be granted only in limited circumstances." *Am.*

*Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d. Cir.

---

[1] The Court is operating under the assumption that Defendant has acquired an easement on the lands of Plaintiff. Defendant has asserted that once the Carbon County Court of Common Pleas approved the bond, (Doc. 13, Ex. E) the taking became complete. 15 Pa. C. S. 1511(g)(2)(iii). *See also In re Appeal of Giesler*, 622 A.2d 408 (Pa. Commw. Ct. 1993).

1994). The burden rests with the moving party to demonstrate such relief is merited.

*NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

### A. Likelihood of Success on the Merits

Plaintiff argues that it would succeed in its claim that the Interstate Commerce

Commission Termination Act of 1995, 49 U.S.C. § 10501(b) (2006) ("ICCTA") preempts the

state condemnation proceeding granting Defendant an easement. The ICCTA gives the

Surface Transportation Board ("STB") exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with
> respect to rates, classifications, rules (including car service, interchange, and
> other operating rules), practices, routes, services, and facilities of such carriers;
> and (2) the construction, acquisition, operation, abandonment, or discontinuance
> of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks
> are located, or intended to be located, entirely in one State.

Congress defined "transportation" to include "a locomotive, car, vehicle, vessel, warehouse,

wharf, pier, dock, yard, *property*, facility, instrumentality, or equipment of any kind related to the

movement of passengers or property, or both, by rail, regardless of ownership or an agreement

concerning use." 49 U.S.C. § 10102(9)(A) (emphasis added). If a state regulation[2]

unreasonably interferes with a railroad's operations, federal preemption applies. *New York*

*Susquehanna and W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir. 2007). "What matters

is the degree to which the challenged regulation burdens rails transportation." *Id.*

In its brief in support of its motion for preliminary injunction, Plaintiff cites several cases

that purportedly show it would likely succeed on the merits. All of the cases, however, are

---

[2] Although the ICCTA does not define "regulation," courts have found that state condemnation proceedings are a form of regulation. *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675 (7th Cir. 2011); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp.2d 1009, 1013 (W.D. Wisc. 2000).

factually distinguishable and favor Defendant's position, rather than Plaintiff's. For instance, Plaintiff relies heavily on *Union Pacific Railroad Co. v. Chicago Transit Auth.*, 647 F.3d 675 (7th Cir. 2011), in which the court found that the city's threatened condemnation of 40% (approximately 13 acres) of the railroad's right of way was an unreasonable interference with the railroad's operations. The city had leased tracks from the railroad for almost fifty years, but when the parties could not agree to new lease terms or a lump-sum payment for a permanent easement, the city began condemnation proceedings. Moreover, because the tracks the city used were "only a few feet beside Union Pacific's current railroad tracks, a taking would unreasonably interfere with Union Pacific's existing railroad traffic," which was "evident from Union Pacific practice of using non-standard procedures to inspect and maintain its Right of Way." *Id.* at 681. In contrast, Defendant's taking is merely a 1,200 square foot area which still allows Plaintiff to operate its tracks as usual. This is a far cry from appropriating nearly 13 acres from a railroad and preventing that railroad from using its own tracks. Plaintiff has also not shown that the gas line would alter its existing railroad traffic, inspections, or maintenance. Plaintiff's other cited cases are similarly unavailing.[3]

---

[3] *Buffalo S. R.R., Inc. v. Village of Croton-on-Hudson*, 434 F. Supp. 2d 241, 249 (S.D.N.Y. 2006) (enjoining village's attempt to condemn an "entire parcel of land in fee simple" and convert the yard into a transloading facility, instead of "looking for an easement over some small area."); *Dakota, Minnesota & E. R.R. v. South Dakota*, 236 F. Supp. 2d 989 (D.S.D. 2002) (permanently enjoining state from enforcing eminent domain statutes that effectively blocked railroad from obtaining financing to complete expansion project); *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009 (W.D. Wis. 2000) (finding preemption of state's attempt to condemn over one-mile of track, or approximately 40%, of the railroad's passing line); *Fort Bend Cnty. v. Burlington N. and Santa Fe R.R. Co.*, 237 S.W.3d 355, 358 (Tex. App. 2007) (finding preemption when county cut through railroad's "passing" track, which allows trains traveling in opposite directions on a single-track line to pass each other); *Norfolk S. Ry. Co. & Alabama Great S. R.R. Co. – Petition for Declaratory Order*, STB Finance Order 35196, 2010 WL 691256 at *2 (S.T.B. Feb. 26, 2010) (granting declaratory relief to railroad whose property – 3.4 acres plus certain strips of land – was at risk of being converted to a public park); *City of Lincoln – Petition for Declaratory Order*, 2004 WL 1802302 at *3 (S.T.B. Aug. 11, 2004) (declaring city's condemnation of a twenty-foot-wide strip of right of way for

4

Additionally, several other cases support Defendant's position that Plaintiff will be unlikely to succeed on the merits. In *Maumee & Western Railroad Corp. – Petition for Declaratory Order*, STB Finance Docket No. 34354, 2004 WL 395835 (S.T.B. Mar. 2, 2004), the STB said "routine, non-conflicting uses, such as non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc., are not preempted so long as they would not impede rail operations or pose undue safety risks." *Id.* at *2. In *Maumee*, the state wished "to acquire an easement for a road crossing over and subsurface utilities under an 8,000 sq. ft. parcel of main line right-of-way," (*Id.* at *1) yet the STB declined to grant the railroad declaratory relief. A later STB decision[4] relied on *Maumee* when it permitted a planned sewer easement which ran underneath the railroad's property to go forward. *Lincoln Lumber Co. – Petition for Declaratory Order*, STB Finance Docket No. 34915, 2007 WL 2299735 (S.T.B. Aug. 10, 2007). The planned twenty-foot wide easement ran longitudinally beneath a portion of the railroad's right-of-way, and the railroad raised almost the identical issues that Plaintiff raises here. It claimed that the proposed storm sewer "would interfere with [its] rail operations and pose safety risks." *Id.* at *2. The Board was not persuaded and denied the railroad's petition for declaratory relief. Employing the interpretive maxim of *ejusdem generis*, the Court finds that gas pipelines would fall under the same general category of non-invasive utilities, such as wire

---

a five-block distance for a pedestrian and bicycle commuter trail was preempted because it narrowed railroad's right-of-way and left it with "less than . . . it requires in connection with its rail operations.").

[4] Though Plaintiff cited STB decisions in its brief, it has not argued that the Court owes the STB deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because the Court believes the STB's interpretation of the Act's preemption clause is correct in relation to this case, it need not decide whether formal deference is required.

crossings and sewer crossings, and it also notes that the easement in this case is much smaller than those at issue in both *Maumee* and *Lincoln Lumber*.

As evidence of unreasonable burdens on its operations, Plaintiff relies on a lone affidavit from Wayne Michel, the railroad's President, as evidence that Defendant's gas line would unreasonably interfere with Plaintiff's railroad operations. (Doc. 13, Ex. H). Plaintiff, however, failed to come forward with specific facts that asserted more than just the mere possibility of "changes of grade or alignment" (Id. at ¶ 5) of the railroad tracks in the future. Despite having been given the opportunity to do so, Plaintiff chose to forego an evidentiary hearing and expressed its desire for the Court to rule on its motion, supported only by this affidavit. (Jan. 18, 2012 telephone hearing, Tr. at 33-34). In his affidavit, Mr. Michel neither claims any technical or scientific expertise on his part, nor does he indicate he relied on the expertise of another in reaching his fairly speculative conclusions that, *inter alia*, Plaintiff "will lose the unfettered use of its railroad operating property," (Doc. 13, Ex. H, ¶ 5) it "will not be able to secure prompt maintenance, repair, and replacement of the gas facilities," (*Id.*) and Defendant's pipeline would interfere with future rail transportation activities and plans, such as "track upgrades, expansions and relocations at the right-of-way." (*Id*. at ¶ 2). As another example of an argument made without evidentiary support, the Court points to a remark by Plaintiff's counsel that the pipeline would interfere with any future plans to move or make changes to the track. "[W]hile [the pipeline] is 10 feet subsurface, when you talk about the depths of the railroad bed and the weight of the rail cars going over it, that is not a significant depth." (Jan. 18, 2012 telephone hearing, Tr. at 25-6). The Court would have been receptive

6

to any submissions of evidence by way of testimony, affidavit, exhibit, or otherwise that would have provided an evidentiary basis for this statement.  The Court, however, cannot grant Plaintiff what it seeks on the basis of unsubstantiated arguments by counsel of unreasonable interference with future railroad operations.  Without actual facts in support of such conclusory statements, the Court cannot find that Plaintiff's railroad operations would be burdened unreasonably by the installation of Defendant's gas line, especially when there would be no present disruptions of the railroad's operations and where the most that can be said is that future track upgrades may possibly be impeded by the presence of the gas line.[5]

Finally, Plaintiff has raised concerns about safety (Doc. 13).  Plaintiff presented no evidence of genuine safety issues associated with the installation or operation of the gas pipeline.  Again, the only allegation of an undue safety risk is found in the Michel affidavit, in which Mr. Michel opined that the gas line "creat[ed] a significant public safety risk due to the potential for gas leaks and gas explosions." (Doc. 13, Ex. H, ¶ 5).  Plaintiff also tendered no evidence to show how the manner in which the gas would be transported through its land was unsafe.  Without more, such a conclusory statement does not persuade the Court of an "undue safety risk." *Maumee*, 2004 WL 395835 at *2.  Mr. Michel also stated that Defendant had failed to "follow the most basic of safety requirements" by failing to arrange for inspectors to be present during drilling.  (Id. at ¶ 7).  According to Plaintiff's counsel, though, the condemnation bond should cover the cost of inspectors.  (Doc. 13, Ex. G, letter dated Oct. 18, 2011).

---

[5] Though courts will not require railroads to show immediate plans in the future for track upgrades or improvements, if a taking or condemnation proceeding prevented the railroad from using its tracks at all, then such action would unreasonably interfere with railroad operations.  Such is not the case here.  *Union Pac.*, 647 F.3d at 681; *Norfolk*, 2010 WL 691256 at *2; *City of Lincoln – Petition for Declaratory Order*, 2004 WL 1802302 at *3 (S.T.B. Aug. 11, 2004).

Furthermore, a letter dated January 16, 2012 from Defendant's counsel invited Plaintiff "to arrange for one of its inspectors" to be on-site when drilling was scheduled to begin on January 19, 2012 (Doc. 22). In light of these submissions on the record, the Court does not find that installation of the gas line would pose an undue safety risk.[6]

Because of the paucity of evidence before it, the Court does not find that Defendant's gas pipeline would interfere unreasonably with Plaintiff's railroad operations,[7] and the ICCTA does not preempt the state condemnation proceedings. Thus, the Plaintiff's likelihood of success on the merits of its preemption claim is low and as such, Plaintiff fails to meet its burden for this element to obtain a preliminary injunction.

Plaintiff also inserted a claim of Commerce Clause violation in support of its argument for likelihood of success on the merits, but other than evidence that the Court has already considered, it submitted no evidence in support of this claim. Plaintiff argues that Defendant's easement "imposes an impermissible burden on interstate commerce in violation of the Commerce Clause of the United States." (Doc. 13). That is the sole mention of a Commerce

---

[6] Cases in which safety was a genuine concern are distinguishable from this case. *City of Lincoln*, 2004 WL 1802302 at *4 ("[T]he unloading of lumber and I-joists would also present a safety hazard to pedestrians and bicyclists using the proposed trail, because those articles would be directly above the trail while the forklift positioned them for unloading, and an accidental drop could be harmful or fatal to the trail users below."). *Norfolk*, 2010 WL 691256 at *3 ("for rail safety, [the railroad] must maintain the retaining wall" which held the rail lines in place).

[7] It is true that the terms of the bond prohibit Plaintiff from "placing or erecting buildings or non-movable structures within the area of the easement," (Doc. 13, Ex. F) but Plaintiff had the opportunity to object to these terms before the Carbon County Court when Judge Serfass ruled on the adequacy of the bond only. (Doc. 13, Ex. E). Furthermore, once Defendant has an easement on a property, Plaintiff cannot unreasonably interfere with the use or enjoyment of that easement. *Palmer v. Soloe*, 601 A.2d 1250, 1252 (Pa. Super. Ct. 1992) (citing *Taylor v. Heffner*, 58 A.2d 450, 454 (Pa. 1948)). Finally, though Defendant's planned 1,200 square foot easement would prohibit Plaintiff from building within its area and would thus constitute interference, it is not an *unreasonable* interference for the reasons stated above.

Clause violation, and in its unsupported state, falls far short of a showing of likelihood of success on the merits.

## B. Irreparable Harm

"A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (internal citations omitted). "More than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994) (internal quotations omitted). The moving party must meet a heavy burden of demonstrating that without the injunction, the injury caused is "of a peculiar nature, so that compensation in money cannot atone for it . . . . The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for." *Id* (internal citations omitted).

Future speculative harms do not warrant the extraordinary relief of a preliminary injunction. In *Holiday Inns of America, Inc. v. B&B Corp.*, 409 F.2d 614 (3d Cir. 1969), Holiday Inn sued a motel in the Virgin Islands operating under the name "Holiday Inn" and "Holiday Inn of St. Thomas." The circuit court found that the plaintiff was not entitled to an injunction until it was in competition with the defendant in the same market, and the closest hotel of the Plaintiff's to the Virgin Islands at that time was in San Juan, Puerto Rico, 70 miles away. The court observed that the plaintiff "professes an intention to commence construction and operations

9

here at some time in the future, but it has not yet done so." *Id.* at 617. In finding that the

plaintiff was not yet entitled to an injunction, the court stated:

> We must protect that which is protectable, but, in so doing, we must limit the use
> of injunctive relief to situations where it is necessary to prevent immediate and
> irreparable injury. The dramatic and drastic power of injunctive force may be
> unleashed only against conditions generating a presently existing actual threat; it
> may not be used simply to eliminate a possibility of a remote future injury, or a
> future invasion of rights, be those rights protected by statute or by the common
> law.

*Id.* at 618 (emphasis added).[8]

Plaintiff claims that it will suffer irreparable harm unless the Court grants the requested

injunction because, *inter alia*, "it will lose the unfettered use of its railroad operating property,"

(Doc. 2, Ex. H, ¶ 5) it "will not be able to secure prompt maintenance, repair, and replacement

of the gas facilities," (*Id.*) and Defendant's pipeline would interfere with future rail transportation

activities and plans, such as "track upgrades, expansions and relocations at the right-of-way."

(*Id.* at ¶ 2). As stated before, Plaintiff has not demonstrated how the gas pipeline would

interfere with current railroad operations, and the crux of Plaintiff's complaint is that absent the

License Agreement, Plaintiff cannot require Defendant to move its gas pipeline should Plaintiff

decide to make changes to its tracks in the future. Plaintiff has not shown the existence of any

future plans that would put its tracks and the pipeline in conflict, so much like the plaintiff in

*Holiday Inns*, there is no "presently existing actual threat" that would entitle it to a preliminary

injunction *at this time*. That situation may very well change going forward, but the situation, as

---

[8] By the time the circuit court decided the case, however, the plaintiff Holiday Inn had received two franchise
applications and a request for the availability of a franchise in the Virgin Islands. Thus, with agreement from
Holiday Inn's counsel, the circuit court affirmed the district court's grant of a preliminary injunction, modifying it to
come into force once Holiday Inn commenced operations in the Virgin Islands. *Id.* at 618-19.

it stands, raises precisely the "possibility of some remote future injury" that courts should not enjoin.

Further, Plaintiff has not shown how this gas pipeline could cause such harm that could not otherwise be compensated in money damages. Defendant has posted a condemnation bond of $100,000 should Plaintiff suffer any damages from the installation of the gas pipeline. (Doc. 13, Ex. F). Defendant's original bond was for $35,000 only, which Plaintiff's counsel argued was "woefully inadequate" in a letter to Defendant's counsel. (Doc. 14, Ex. G, letter dated Oct. 18, 2011). Rather, Plaintiff felt that a "condemnation bond in the amount of $100,000 [was] required in order to cover the premium of railroad protective insurance, railroad inspector fees and the just compensation for the taking of the easement." (Id.).

Yet, Plaintiff now contends that the terms of the bond are too narrow and do not adequately protect it because the bond covers only such "sums . . .[Plaintiff] shall be entitled to receive as damages . . . by reason of the appropriation of a right-of-way and easement . . . when said damages shall have been agreed upon by the parties or shall have been legally awarded to [Plaintiff]." (Doc. 19). Rather, if Defendant signed the Licensing Agreement, Plaintiff could direct Defendant to "relocate its gas pipeline at its cost where necessary to permit and accommodate changes of grade or alignment and improvement in or additions to [Plaintiff's] railroad facilities." (Doc. 13, Ex. H, ¶ 5). Undoubtedly, the Licensing Agreement provides more protection than the condemnation bond does, but the Agreement addresses contingencies whose occurrence in the future cannot be discerned and therefore cannot serve as the foundation for injunctive relief at present. In addition, the Court observes that on several

occasions, during the telephone hearing and in Plaintiff's filings, Plaintiff states that if Defendant

would sign the Licensing Agreement, Plaintiff would not object to the installation of the gas

pipeline.[9] This position undercuts Plaintiff's argument that without the injunction, it would suffer

irreparable harm from the gas line's installation. Lastly, Plaintiff has not shown under what

authority, statutory or otherwise, the Court could order Defendant to sign the Licensing

Agreement.

## C. Balancing of the Harms

Should the Court grant the requested relief, Defendant could not provide "backup [gas

services] for the entire City of Hazleton, serve customers along Rt. 309, serve industrial

accounts in Banks Township, serve other customers in the Borough of McAdoo, and also to

serve one large-use customer, Altadis." (Doc. 24, Affidavit of Donald Brominski). Granting the

injunction would clearly cause Defendant significant harm. On the other hand, Plaintiff argues

that allowing Defendant to install the gas pipeline will interfere with any future track changes

and upgrades. Again, Plaintiff has submitted scant evidence as to how the installation and

operation of the underground gas pipeline causes either present or future harm to the railroad

or its operation.

The Court is aware that without the injunction, Defendant would have a permanent

easement under Plaintiff's tracks. However, at present, there is scant evidence before the

---

[9] At the telephone hearing, counsel for Plaintiff said, "The very simple fact is that [Plaintiff] is requiring and insisting on the execution of its standard license agreement." (Jan. 18, 2012 telephone hearing, Tr. at 8). To clarify, the Court asked Plaintiff's counsel, "If UGI were to sign the licensing agreement, then in [Plaintiff's] view, it would be appropriate and permissible for UGI to lay that pipe as it wishes?" In response, counsel for Plaintiff said, "I believe so. Yes, Your Honor." (*Id.* at 11). Elsewhere, Plaintiff indicated "[Plaintiff] has informed UGI that [Plaintiff] would not permit the entry of UGI or its agents upon [Plaintiff's] right-of-way to construct the gas pipeline and related facilities until UGI signs [Plaintiff's] standard License Agreement." (Doc. 13, at 5). *See also* (Complaint, ¶ 1, 12, 14, 16).

Court that any damages that Plaintiff might suffer arising from the installation and operation of the gas pipeline would be anything other than incidental and speculative, as opposed to the consequences that would follow if Defendant were enjoined from installing its gas line. As a result, it finds that the balancing of the harms weighs in favor of denying the injunction.

### D. Public Interest

To be sure, both parties provide important services to the public. In this case, though, the public interest would be better served by denying the injunction so Defendant's customers can have access to gas.

### III. Conclusion

Because there is insufficient evidence for the Court to conclude Plaintiff is likely to succeed on the merits or that denying the injunction would cause irreparable harm to Plaintiff, and because the balance of harms and the public interest favor Defendant, Plaintiff's motion for a preliminary injunction is denied.

In denying Plaintiff's motion, the Court determines only the issue of Plaintiff's requested relief as stated, namely enjoining Defendant "from taking possession of or entering upon the railroad operating property belonging to [Plaintiff]" (Doc. 2) to install the gas line. This ruling does not address any actual contingencies or conflicts that may arise where, as a result of a decision by Plaintiff to make changes in grade or alignment, track location, or any other improvement, addition, expansion, or re-location of its facilities, Plaintiff might require Defendant to relocate its pipeline or take other measures designed to ensure safe co-existence with Defendant's pipeline and non-interference with railroad operations. The Court makes no

ruling on what are now only hypothetical conflicts that may never arise. Rather, as explained

herein, the Court addresses only the installation of the gas line, on the facts set forth by the

parties.

Robert D. Mariani
United States District Court Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

READING BLUE MOUNTAIN          :
& N. R.R. CO.                  :
                               :
                Plaintiff      :
       v.                      :        3:11-CV-2182
                               :        (JUDGE MARIANI)
UGI UTILITIES, INC.,           :
                               :
                               :
                Defendant      :

## ORDER

**AND NOW, TO WIT, THIS 25TH DAY OF JANUARY 2012, IT IS HEREBY ORDERED**

**THAT:**

1.  Plaintiff's Motion for Preliminary Injunction (Doc. 2) is **DENIED** as to the installation of

    Defendant's gas pipeline only, based on the facts presently before the Court.

Robert D. Mariani
United States District Court Judge